**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOTEL, MOTEL AND CLUB EMPLOYEES' UNION, LOCAL 568. AFL-CIO, Respondent.**

No. 14074.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1963.

Decided July 10, 1963.

SMITH, Circuit Judge.

The National Labor Relations Board adjudged the respondent, Local 568, guilty of unlawful discrimination against employees, Elliot McIlwain and Anibal Vazquez,[1] in violation of Sections 8(b) (1) and (2) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158 (b) (1) and (2), and entered the usual remedial order. Its Decision and Order are reported in 136 N.L.R.B. 888. The Board seeks enforcement of its Order pursuant to § 10(e) of the Act, 29 U.S.C.A. § 160(e).[2] The petition for enforcement is resisted by the respondent on the ground that its actions, at least under the circumstances of this case, did not constitute unfair labor practices within the meaning of the statute.

Section 8(b) (1) makes it unfair labor practice for a labor organization or its agents "to restrain or coerce * * * employees in the exercise of the rights guaranteed in section 7." Among the rights therein guaranteed is the right to refrain from certain activities "except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)," 29 U.S.C.A. § 158(a) (3). This section sanctions a union-security agreement between the employer and a labor organization under the conditions therein prescribed.

Section 8(b) (2) makes it an unfair labor practice for a union or its agents to "cause or attempt to cause an employer * * * to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring * * * membership;".

The Local and Philadelphia Sheraton Corporation, the operator of the Sheraton

William J. Avrutis, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for petitioner.

Alan R. Howe, Philadelphia, Pa. (Edward Davis, Philadelphia, Pa., on the brief), for respondent.

Before STALEY and SMITH, Circuit Judges, and SHAW, District Judge.

---

1. The Local was found guilty of unlawful discrimination against a third employee, one Miguel Sanchez, but in his case, enforcement is not opposed.

2. The Order was directed also against the employer, Philadelphia Sheraton Corporation, but as to it, enforcement is apparently not necessary and is not sought.

Hotel, were parties to a collective bargaining agreement which contained a valid union-security clause. Pursuant to their agreement, when an employee was first hired by the Hotel, he was informed, if not already a member of the Local, that it would be necessary for him to acquire such membership. The employee was referred by the Hotel to the union hall, where he could make application for membership.

The Local's procedure with respect to applicants for membership was as follows: Upon payment of his initiation fee, the prospective member is directed to appear before the Examining Committee at a stated date. When he appears he is told, for the first time, the amount of monthly dues he will be required to pay. The amount varies according to salary earned and whether the employee receives gratuities. When the prospective member appears before the Examining Committee, he is required to pay his dues for the current month and to execute a "check off" authorization. If he is unable to pay the current month's dues, he must make another appearance before the Examining Committee. When he has been cleared, the prospective member is required to sign forms for health, welfare, medical and insurance benefits. Thereafter he is required to appear at a regularly scheduled meeting of the Educational Committee. At the next general meeting of the Local, following his appearance before the Educational Committee, the prospective member is sworn. The evidence in this case shows that the administration of this elaborate procedure was anything but regular.

McIlwain was hired by the Hotel as steward during the first week of October, 1960. On the instructions of the Hotel, he presented himself at the union hall on October 4, for the purpose of obtaining a work slip. He signed certain papers at the request of a clerk and was given the work slip. When it was learned that he had been a member of another local and had permitted his membership to lapse, he was informed that he would be required to pay a reinstatement fee of $50.50 within thirty days. This fee was paid to a representative of the Local on November 4, at which time McIlwain was instructed to return on November 17, a day upon which the Examining Committee was scheduled to meet. He returned, as instructed, but was told to appear on the following day. He was unable to appear on November 18 because of his employment. It should be noted that the Committee was not scheduled to meet on the said date.

McIlwain next presented himself at the union hall sometime during the first week of December, at which time he was directed to return on December 13. The calendar of the Local shows that the Examining Committee was not scheduled to meet on the said date. McIlwain did not return as directed but reported to the union hall during the first week in January. He was then directed to return during the following week but was unable to do so because he was hospitalized on January 12.

After his hospitalization, McIlwain reported for work on February 6. When he reported for work on February 9, there was affixed to his timecard a note from his employer reading as follows:

"Your name has been left off the Jan. dues list for Local 568. We will not deduct these dues and this is to inform you that you should report to the Union to clear this matter up."

He reported to the union hall on the following day, February 10, when he was directed to appear on February 14, a day upon which the Examining Committee was scheduled to meet. He appeared as directed and was told that it would be necessary for him to see one Timperio, an organizer, who was not present at the time. He was told that he could see Timperio on the following day, between the hours of 8:30 A.M. and 5 P.M. When McIlwain reported on the following day, February 15, he was told that he had "just missed" Timperio. He reported to the union hall on February 16 and met Timperio, who informed him that the Local had requested his discharge for

nonpayment of dues. McIlwain was discharged on the following day.

Vazquez was hired as a cook on September 21, 1960, and on the same date reported at the union hall, pursuant to the instructions of the Hotel's Personnel Office. While there, he executed a written application for membership and was given a "timecard"[3] and a union button. When it was learned that he held membership in another union, he was directed to obtain a withdrawal card and to return on September 29, when he was expected to report for work. Vazquez returned, as directed, and presented his withdrawal card. He was then told that he was expected to pay his initiation fee within thirty days. He was also told that he would be required to appear at meetings of the Educational Committee on October 19 and November 23. He attended the meeting on October 19, and paid his initiation fee, in the amount of $25.00, on October 27. On the latter date he met Timperio, who instructed him to appear before the Educational Committee on November 23. Vazquez complied with these instructions.

During the second week of January 1961, Vazquez received a note from his employer directing that he appear at the union hall on January 27th. He appeared, as directed, and met one Scheirer, a vice president of the Local, to whom he gave his name. When Vazquez inquired as to the reason for the note, he was told by Scheirer " * * * we don't need you, we got you already. You can go." Shortly thereafter, on February 3, Vazquez was informed by the Hotel that he was discharged at the request of the Local because of his failure to pay his union dues. He promptly reported to the union hall where he met Timperio, and after a brief altercation was told to "get out."

When McIlwain and Vazquez paid their initiation fees, they were given receipts bearing a notation, in fine print, "Dues are due and payable the 1st Day of Month for Current Month." At the time these receipts were given, neither of said employees had been afforded the opportunity to appear before the Examining Committee, and there had been no determination as to the amount of monthly dues payable. It is admitted that under the procedure of the Local, hereinabove outlined, it was customary not to demand the payment of dues until the employee appeared before the Examining Committee. McIlwain and Vazquez were not afforded the opportunity to make their appearances. The former appeared at the union hall on two occasions when the Committee was scheduled to meet, but on each occasion was told to return on another date when the Committee did not meet. Vazquez was never requested to make such an appearance. The customary procedure, for some reason not explained, was not followed in their cases.

The Board found that "at no time was either man told the amount of the dues or when such payments were to be made." This finding is of significance here because, under the procedure of the Local, the initial dues became payable after the amount thereof had been determined at the applicant's meeting with the Examining Committee. When viewed in the light furnished by the record in its entirety, we are of the opinion that these findings are supported by "substantial evidence," and must be accepted. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456 (1951). The Board further found that the Local "having failed in its duty to apprise Vazquez and McIlwain of their dues-paying obligations, * * * could not justifiably demand their discharge for failure to perform such undisclosed obligation."

In general, the Act makes it illegal to require union membership as a condition of employment, or to discharge an employee for non-membership. The only exception is contained in the proviso to Section 8(a) (3), which authorizes union-security agreements under the conditions therein prescribed but prohibits the ter-

---

**3.** This was probably a work slip similar to the one given McIlwain.

mination of employment under such agreements if union "membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership." See Radio Officers v. Labor Board, 347 U.S. 17, 40, 74 S.Ct. 323, 98 L.Ed. 455 (1954). The exception has been carefully circumscribed by the express terms of the statute in order to protect the rights of the employee.

 When an individual accepts employment with a company which is party to a union-security agreement, he is not free to choose whether he desires to join the union. Nor does he have a voice in the selection of his bargaining representative. He must become a member of the union, currently representing the other employees, as a condition of his continued employment. The union may not deny the employee membership except for a "failure * * * to tender the periodic dues and the initiation fees uniformly required * * *."

The comprehensive authority vested in the union, as the exclusive agent of the employees, leads inevitably to employee dependence on the labor organization. There necessarily arises out of this dependence a fiduciary duty that the union deal fairly with employees. See N. L. R. B. v. International Woodworkers of America, 264 F.2d 649 (9th Cir. 1959), cert. den. 361 U.S. 816, 80 S. Ct. 56, 4 L.Ed.2d 63 (1959); International Union of Electrical, Radio & Machine Wkrs. v. N. L. R. B., 113 U.S. App.D.C. 342, 307 F.2d 679 (1962), cert. den. 371 U.S. 936, 83 S.Ct. 307, 9 L.Ed.2d 270 (1962). At the minimum, this duty requires that the union inform the employee of his obligations in order that the employee may take whatever action is necessary to protect his job tenure. International Union of Electrical, Radio & Machine Wkrs. v. N. L. R. B., supra. The union may not evade this duty, as the Local did here, and then demand the dismissal of the employee when he becomes delinquent in the payment of his dues.

The union's assertion that McIlwain and Vazquez failed to make a timely tender of dues must be viewed in the context of the statutory requirements of fair dealing. Thus viewed, we cannot say that the Board exceeded the limits of its authority or that the Board's findings transgressed the limits of discretion afforded it by the Act. National Labor Relations Board v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308. It is clear that the union here failed to advise the employees of their obligations and the consequences arising out of arrearages allegedly incurred. Therefore, the Board could properly find that no obligation to pay dues arose, and that the union's demand for discharge violated the Act.

The petition for enforcement will be granted.