**H. C. MACAULAY FOUNDRY COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 76–1984.

United States Court of Appeals, Ninth Circuit.

May 10, 1977.

Herbert S. Matthews, argued, South San Francisco, Cal., for petitioner.

Elliott Moore, Andrew F. Tranovich, argued, National Labor Relations Bd., Washington, D. C., for respondent.

Before CHOY and KENNEDY, Circuit Judges, and PREGERSON,* District Judge.

KENNEDY, Circuit Judge:

In the proceedings below, the National Labor Relations Board (the Board) held that the H. C. Macaulay Foundry Company (the Company) violated National Labor Relations Act (the Act) § 8(a)(3), 29 U.S.C. § 158(a)(3). The Board found that at the request of the International Molders and Allied Workers, Local Union 164 (the Union), the Company had wrongfully discharged one George Sottero, the complainant. The Board awarded Sottero back pay.[1] The Company petitions for review of the Board's order, and the Board cross-petitions for enforcement. We affirm and enforce the order.

In May 1975, Sottero took a leave of absence to recover from injuries sustained on the job. At that time, he was delinquent in paying his union dues. On July 10, 1975, unaware of Sottero's absence from work owing to his injuries, the Union sent a letter notifying him that unless he paid his dues "on the first pay day," his employment would be terminated pursuant to a collective bargaining agreement that contained a union security clause requiring employees covered by the agreement to become and remain members of the Union.[2] Sottero interpreted the letter as requiring him to pay his dues on the first payday after his return to work. Sottero returned to work on August 13, 1975; the first payday following his return was August 22. On August 21, the Company received a letter from the Union requesting that Sottero be discharged immediately for nonpayment of dues.

It is undisputed that on the day the Company received the Union's letter, Sabatini, a

Company representative, met with Sottero and a union shop steward. The parties conflict, however, as to what occurred next. Sottero testified that he told the Company representative that he had received a letter from the Union stating that he need not pay his back dues until August 22, the first payday after his return to work. The Company representative, Sottero claimed, responded that this "was a matter between Sottero and the Union."

According to Sabatini's testimony, Sottero mentioned that he had received some form of notice permitting him to pay the back dues on August 22. When Sabatini asked the shop steward if he knew of such an arrangement, the steward replied that he had no such knowledge and that the Company had no choice but to fire Sottero. The Board credited Sottero's testimony rather than that of Sabatini.

Sottero was terminated on August 21. On the following day, Sottero went to the Union office and told the Union's business agent the facts surrounding the discharge. The Board found that the business agent advised Sabatini that a mistake had been made and that the Company should reinstate Sottero. Again, Sabatini disputed this characterization of the facts.

On September 5, the Union sent the Company a letter that read in part:

This letter is to rescind our letter of termination, sent to you on August 13, 1975, on George Sottero. We were not informed that Sottero was off work on disability. Hoping you will comply with our wishes.

On September 9, the Company answered the Union in writing, asking whether Sottero was to be considered a member of the Union in good standing, so that the Compa-

---

* Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. The Board's order is reported at 223 NLRB No. 125.

2. The agreement provides in pertinent part: [W]hen the Employer is notified by the Union in writing that an employee is delinquent in payment of Union dues . . . the Employer shall immediately terminate such employee. Such employee shall not be reemployed by the Employer until notified by the Union that the employee is a member in good standing in the Union, or the employee presents work clearance from Union to Employer.

ny might reemploy him despite the security clause. The Union failed to respond. Several weeks after his discharge, Sottero was reinstated by the Company.

Sottero filed a complaint with the Board charging that the Company and the Union had violated sections 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) & (3). The administrative law judge ruled that both the Union and the Company had committed unfair labor practices. The judge also held, however, that the Union had terminated its liability when it advised the Company of its error in the telephone call to Sabatini. The judge thereupon ordered that Sottero be awarded back pay for the period of his discharge; the Union and Company were held jointly and severally liable for the period from August 21 to August 27, 1975. The Company was held solely liable for lost wages accruing after that date. The Board affirmed the findings of the administrative law judge.

The Company contends that the Board erred because: (1) the Union's discharge request did not violate the Act and (2) even if the request was unlawful, the Company's action in complying with the request was proper.

*The Union's Violation*

■ In general, an employee may not be discharged for nonmembership in a union, 29 U.S.C. § 158(a)(3), and a union that causes an employer so to discriminate against an employee is guilty of an unfair labor practice. 29 U.S.C. § 158(b)(2). Pursuant to a valid union security agreement, however, a union may effect discharge of an employee who by nonpayment of dues fails to maintain union membership. 29 U.S.C. § 158(a)(3); *NLRB v. Hershey Foods Corp.,* 513 F.2d 1083, 1084–85 (9th Cir.1975); *NLRB v. Brotherhood of Teamsters,* 458 F.2d 222, 225 (9th Cir. 1972).

■ Where a union invokes a valid security clause to demand discharge of an employee for nonpayment of dues, the Union must deal fairly with the member. *NLRB v. Hotel, Motel and Club Employees' Union, Local 568,* 320 F.2d 254, 258 (3d Cir. 1963);

*Cf. NLRB v. International Woodworkers of America,* 264 F.2d 649 (9th Cir. 1959). In this respect the Union has a fiduciary obligation to the employee, and at a minimum must "inform the employee of his obligations in order that the employee may take whatever action is necessary to protect his job tenure." *NLRB v. Hotel, Motel and Club Employees Union, Local 568,* 320 F.2d at 258.

■ In the case before us, the Union breached that fiduciary duty. In its letter to Sottero explaining that it would demand his discharge if he could not pay his dues, the Union advised him that back dues were to be paid on or before "the first pay day." Because Sottero was officially on leave to recover from injuries, the language was at best ambiguous. Sottero could reasonably conclude that the deadline for the payment of his dues was the first payday *after his return,* rather than the first payday after receipt of the letter. By reason of its fiduciary obligation to the employee, the Union must bear the responsibility for this ambiguity. Therefore, the Union's action in initially requesting Sottero's termination violated section 8(b)(2) of the Act.

*The Company's Violation*

■ While the Act permits a union and employer to enter into an agreement that payment of union dues be a condition of employment, it also provides that an employer may not justify a discharge for nonpayment of dues "if he has reasonable grounds for believing that membership was denied or terminated for reasons other than failure of the employee to tender the periodic dues . . . uniformly required as a condition of acquiring or retaining membership." 29 U.S.C. § 158(a)(3)(B). Therefore, if the employer has a reasonable ground to believe that a union's discharge is an improper one, the employer violates the Act by complying with that demand.

■ The employer need not in every case inquire into the facts surrounding a union's request to fire an employee. A duty to inquire into the circumstances be-

hind a union's demand that an employee be discharged only arises where the employer is aware of facts that would lead him to believe that the discharge may be for an improper purpose. *NLRB v. Zoe Chemical Co.,* 406 F.2d 574, 580 (2d Cir. 1969). In determining whether such a duty exists, and in assessing the scope of that duty, several factors must be considered: the nature of the facts known to the employer and the degree of doubt that they would raise as to the legality of the union's action; the burden that further inquiry would impose on the employer; and the likelihood that an investigation would lead to prompt and certain resolution of the employer's uncertainity. *Id.* at 583. The duty to inquire is therefore not exhaustive, and the extent of the duty, if any, will vary from case to case. Here, it would have been in no way burdensome for the Company to make a prompt and adequate investigation. Had the Company done so, the matter could have been resolved simply by telephoning the responsible union officials. The Board could properly determine that the Company did not conduct an adequate investigation.

The Company contends that even if it had a duty to investigate, its duty was discharged when Sabatini, the Company representative, met with the shop steward about Sottero's problems. The administrative law judge, however, credited Sottero's, rather than the Company's version of that meeting. The trial examiner is responsible for evaluating the credibility of witnesses. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Vegas Vic, Inc.,* 546 F.2d 828 (9th Cir. 1976). We hold that the administrative law judge's credibility finding is supported by sufficient evidence in the record. Further, even if we were to accept the Company's version of the meeting, our conclusion that the Company did not discharge its duty to investigate would not change. There is nothing in the record to indicate that the shop steward should have known about correspondence between the Union and an individual member. The Board's determination that the Company violated section 8(a)(3) of the Act by complying with the Union's unlawful discharge demand is therefore supported by substantial evidence.

 Finally, the Board held the Union terminated its liability when it communicated to the Company that Sottero should be reinstated. The Board thus held the Union and the Company jointly and severally liable for Sottero's back pay only through August 27, 1975, and held the Company solely liable thereafter. It was proper for the Board to impose joint and several liability on the Company and the Union through August 27. *See NLRB v. Campbell Soup Co.,* 378 F.2d 259, 262 (9th Cir. 1967). It is established, however, that a union may terminate its liability by notifying the employer and the employee that it has no objection to reemployment. *Brotherhood of Teamsters, Local 70,* 212 NLRB 714 (1974); *Westwood Plumbers,* 131 NLRB 562 (1961). In this case, the Board could properly hold that the Union terminated its liability when it requested that the Company reinstate Sottero. According the decision of the Board is affirmed, and the Board's order shall be enforced.