568 F.2d 665
 97 L.R.R.M. (BNA) 2917, 83 Lab.Cas. P 10,396
 GENERAL TEAMSTERS LOCAL 162, INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Platt Electric Supply, Inc., Intervenor-Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
GENERAL TEAMSTERS LOCAL 162, INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, Respondents,
Platt Electric Supply, Inc., Charged Party and Respondent.
 Nos. 76-2607, 76-2915.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 30, 1978.
 
 Mary K. Schuette (argued), Washington, D. C., for N. L. R. B.
 Herbert B. Galton (argued), Jerome B. Buckley, Jr., of Galton & Popick, Portland, Or., for General Teamsters Local 162.
 Richard C. Hunt (argued), of Dezendorf, Spears, Lubersky & Campbell, Portland, Or., for Platt Elec. Supply Co.
 Petition to Review a Decision of the National Labor Relations Board.
 Before DUNIWAY and HUFSTEDLER, Circuit Judges, and WILLIAMS,* District Judge.
 DUNIWAY, Circuit Judge:
 
 INTRODUCTION
 
 1
 General Teamsters Local 162, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union) petitions for review of an order of the National Labor Relations Board. The Board cross-petitions for enforcement of its order, which is reported at 224 N.L.R.B. 1477. We deny the petition for review and enforce the Board's order.
 
 FACTS
 
 2
 Platt Electric Supply, Inc. (Platt) is an Oregon corporation with its headquarters in Portland, Oregon. For the past 16 years, Platt has been a party to the Union's collective bargaining agreements with the Heavy Hardware, Steel, Foundry, Plumbing, Metal Trade Shops and Paper Trade Association, although it has never been a member of the Association. The most recent agreement covered all truck drivers, helpers and dispatchers employed by Platt in Portland. It ran from August 1, 1973, through August 1, 1976, a period during which the dispute giving rise to this case began.
 
 
 3
 The agreement's relevant provisions were (1) a union security clause, requiring new employees to join the Union on the thirtieth day of their employment; (2) a sympathy strike clause, providing that "(i)t shall be no violation of this Agreement for any member of this Union to refuse to cross a bona fide picket line;" and (3) a no-strike clause, providing for the submission of all disputes to arbitration. The third provision, however, did not apply to Platt, which was not an Association member.
 
 
 4
 On January 8, 1975, a sister local of the Union began to picket Platt's Portland office in support of its position in a dispute at another one of Platt's shops in Vancouver, Washington. Birdsall, Getchall and Reisinger, Platt's three Union employees in Portland, respected the picket line and did not report to work. In response, Platt notified the Union that it regarded the work stoppage as a violation of the contract's no-strike provision, and therefore considered the contract to have been terminated. Platt proceeded to hire Hill, Schindler and Schmidt as replacements for the three striking employees.
 
 
 5
 On March 18, 1975, the pickets were removed and striker Getchall reported for work, requesting reinstatement. He was handed a prepared notice telling him that he would not be rehired because no jobs were available. Getchall promptly notified his fellow strikers of Platt's position. On the same day, a Union representative spoke to Platt's president and vice president, asking reinstatement of the three strikers, and demanding that Platt discharge the strikers' replacements for failure to join the Union as the contract required. Platt refused to comply with the Union's demand on the ground that the contract was no longer in effect. It retained the replacement employees and refused to reinstate the strikers.
 
 
 6
 On April 29, 1975, the Union sent letters by registered mail to the strikers' replacements, in care of Platt, telling them that the contract required them to join the Union in order to retain their jobs. Platt's mail clerk signed return receipts for the letters, but they were not delivered to the replacement employees.
 
 THE BOARD'S DECISION AND ORDER
 
 7
 The Board concluded that Platt had violated sections 8(a)(1) and (5) of the National Labor Relations Act (Act), 29 U.S.C. §§ 158(a)(1) and (5), by withdrawing recognition from, and repudiating its contract with, the Union. However, the Board found no violation of sections 8(a)(1) and (3) in Platt's refusal to reinstate the returning strikers, nor did it find any violation of sections 8(a)(1) and (5) in Platt's failure to discharge the strikers' replacements for non-compliance with the contract's union security provision.
 
 
 8
 The Board's order requires Platt to (1) honor its contract with the Union; (2) cease and desist from interfering with its employees' rights to engage in collective bargaining; (3) forward any subsequent communications from the Union to the replacement employees; and (4) offer reinstatement to the strikers if the replacement employees fail to join the Union after being notified of their obligation to do so.
 
 I.
 REPUDIATION OF THE CONTRACT
 
 9
 Substantial evidence on the record as a whole supports the Board's finding and conclusion that Platt violated sections 8(a)(1) and (5) by repudiating its contract with the Union. Platt's refusal to honor the contract is not excused by its mistaken belief that it had the benefit of the contract's no-strike provisions, despite its status as a nonmember of the Association. The repudiation of a valid labor agreement violates the Act. N. L. R. B. v. Hyde's Supermarket, 9 Cir., 1964, 339 F.2d 568, 572. This is true regardless of the employer's state of mind. N. L. R. B. v. M & M Oldsmobile, Inc., 2 Cir., 1967, 377 F.2d 712, 716-17; N. L. R. B. v. Bardahl Oil Co., 8 Cir., 1968, 399 F.2d 365, 369-70; Old King Cole, Inc. v. N. L. R. B., 6 Cir., 1958, 260 F.2d 530, 532. "There are situations in which it is not enough that an employer is convinced he is right," N. L. R. B. v. M & M Oldsmobile, Inc., supra, at 716, and this is one of them.
 
 II.
 
 10
 THE REFUSAL TO DISCHARGE THE REPLACEMENTS AND REINSTATE THE STRIKERS
 
 
 11
 Returning economic strikers do not have an absolute right to reinstatement. If those strikers have been permanently replaced, the Act does not compel an employer to discharge the replacements when the work stoppage ends, in order to rehire those strikers who seek to return. N. L. R. B. v. Mackay Radio & Telegram Co., 1938, 304 U.S. 333, 345-46, 58 S.Ct. 904, 82 L.Ed. 1381. If jobs are available, however, the employer must ordinarily hire strikers who have unconditionally applied for reinstatement. The refusal to hire strikers when positions are available is an unfair labor practice, unless the employer's decision is supported by "legitimate and substantial business justifications." N. L. R. B. v. Fleetwood Trailer Co., 1967, 389 U.S. 375, 378, 88 S.Ct. 543; Laidlaw Corp. v. N. L. R. B., 7 Cir., 1969, 414 F.2d 99, 103-06.
 
 
 12
 The Union concedes that economic strikers Birdsall, Getchall and Reisinger were permanently replaced by Platt during the work stoppage. However, it argues that Platt should have discharged the replacements for failure to comply with the contract's union security provision, and that, had Platt done so, jobs would have been available for the strikers when they returned. Under the Union's argument, the lawfulness of Platt's failure to reinstate the strikers hinges on the propriety of the company's refusal to discharge the replacement employees.
 
 
 13
 An employee cannot be discharged for non-compliance with a union security clause unless the Union first informs him of his obligations under the clause. H. C. Macaulay Foundry Co. v. N. L. R. B., 9 Cir., 1977, 553 F.2d 1198, 1200; N. L. R. B. v. Hotel, Motel and Club Employees' Union, 3 Cir., 1963, 320 F.2d 254, 258. In this case, the Union attempted to notify the replacement employees of their membership obligations. However, the record suggests, and the Board inferred, that Platt deliberately sabotaged the Union's efforts by failing to forward the Union's letters to their intended recipients. The Union claims that it satisfied its duty to the replacement employees by attempting to notify them of their union security obligations. It urges us to charge the replacements with constructive knowledge of the contents of the notification letters.
 
 
 14
 Although we recognize, as did the Board, that the Union's good faith efforts to contact the replacements were thwarted by Platt's conduct, we conclude that the Union's attempt to notify the replacements of their membership responsibilities was insufficient. It would be unjust to the replacements to charge them with knowledge of a contractual provision of which they were actually unaware. Philadelphia Sheraton Corporation, 1962, 136 N.L.R.B. 888, 896, enf'd 3 Cir., 1963, 320 F.2d 254.
 
 
 15
 (W)here the protection of an individual employee's right to continued employment is to be balanced against the statutorily restricted right of a union to enforce a union-security agreement requiring membership as a condition of employment, a union must show that it has dealt fairly with the employee and given him clear notice of what is required of him. Absent such a demonstration, the individual's rights must be held paramount and protected. Local 545, Operating Engineers, 1966, 161 N.L.R.B. 1114, 1121.
 
 
 16
 The Board could properly conclude that "clear notice" means actual notice, not constructive notice. Having failed to furnish the replacement employees with actual notice of their membership obligations, the Union could not rightfully demand that they be discharged. We therefore uphold the Board's finding that the replacements were properly retained in Platt's employ. It follows that Platt had no obligation to discharge the replacements, thereby creating vacancies to be filled by the strikers.
 
 III.
 CONSTRUCTIVE DISCHARGE
 
 17
 The Union argues that the three strikers were constructively discharged by Platt before the replacement employees were hired. It bases this claim on a warning which company spokesman Alfred Blair delivered to Union representatives on the day that the picketing began. Blair told the Union representatives to "have the employees here if they value their jobs."
 
 
 18
 "Reinstatement is the conventional correction for discriminatory discharges." Phelps Dodge Corp. v. N. L. R. B., 1941, 313 U.S. 177, 187, 61 S.Ct. 845, 849, 85 L.Ed. 1271. If Birdsall, Getchall and Reisinger were, in fact, discharged and not merely replaced by the company, they would, as the Union claims, enjoy an unconditional right to reinstatement. However, the complaint issued by the Board's General Counsel did not allege that the strikers had been discharged. Consequently, the administrative law judge made no findings on the question of discharge, nor was the matter considered by the Board in its review. Throughout the proceedings, as the Union concedes on brief, Birdsall, Getchall and Reisinger were considered as economic strikers who had been replaced, rather than as discriminatory dischargees.
 
 
 19
 We are not free to review on appeal a contention "which was never charged in the complaint, never fully litigated at the hearing, and never considered by the Board, for to do would not only offend elemental concepts of due process, but would as well abuse the power given us by the Act." Texaco Inc., Houston Producing Division v. N. L. R. B., 5 Cir., 1969, 408 F.2d 142, 146. See also, N. L. R. B. v. Hyde, 9 Cir., 1965, 339 F.2d 568, 570. The issue of discharge is not properly before us and we therefore decline to consider it.
 
 IV.
 THE REMEDY
 
 20
 The Board concluded that Platt, believing that its contract with the Union had been breached and rescinded, deliberately refrained from passing on to the replacement employees the Union's notice to them that they were required to pay dues to the Union, and that if they did not, they would be discharged. It also concluded that those employees could not be discharged under the union security clause unless they had been given actual notice of their obligation to pay dues and thereafter failed to do so. Accordingly, in balancing the rights of the strikers against those of the replacement employees, it ordered the employer, first, to forward to the replacement employees any subsequent (to the Board's order) communication from the Union concerning union security obligations, and second, if after 30 days from receipt of such notice any of the replacement employees failed to fulfill his union security obligations, to offer reinstatement to the strikers (or, presumably, less than all of them if less than all of the replacement employees failed to fulfill their union security obligations).
 
 
 21
 Member Jenkins would go farther. He agrees that the rights of replacement employees should be protected, and, like the Board, he would not require reinstatement of the strikers until the replacement employees, after notice, fail to fulfill their union security obligations. But he would also protect the rights of the strikers as against Platt, because Platt prevented the giving of notice to the replacement employees. To do this, he would award back pay to the strikers from the time when they would have been entitled to reinstatement if Platt had given the Union's notice to the replacement employees and if 30 days later those employees had failed to pay their union dues. The back pay right would terminate when, following compliance with the Board's order, the replacement employees paid their dues, or when, upon their failure to do so, the Union did not request their discharge.
 
 
 22
 The Union asks us to require the Board to adopt the Jenkins remedy, arguing that, so far as the strikers are concerned, the Board's remedy is a hollow one. We might agree that it is, but we conclude that the Board's discretion in framing remedies is so broad that we should defer to its judgment. See N. L. R. B. v. Seven-Up Bottling Co. of Miami, Inc., 1953, 344 U.S. 344, 346-47, 73 S.Ct. 287, 97 L.Ed. 377; Virginia Electric & Power Co. v. N. L. R. B., 1943, 319 U.S. 533, 539-40, 63 S.Ct. 1214, 87 L.Ed. 1568; Phelps Dodge Corp. v. N. L. R. B., 1941, 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271; Marriott Corp. v. N. L. R. B., 9 Cir., 1974, 491 F.2d 367, 371; Royal Typewriter Co. v. N. L. R. B., 8 Cir., 1976, 533 F.2d 1030, 1045.
 
 
 23
 The Union's petition is denied. The Board's petition is granted, and its order will be enforced.
 
 
 
 *
 The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation