**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 1445, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, Respondent.**

**Gallahue's Supermarkets, Intervenor.**

**No. 80–1492.**

United States Court of Appeals, First Circuit.

Heard Feb. 10, 1981.

Decided April 28, 1981.

---

Ruah Donnelly Lahey, Washington, D. C., Atty., with whom William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Acting Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, and W.

*Of the Fourth Circuit sitting by designation.

Christian Schumann, Atty., Washington, D. C., were on brief, for petitioner.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., was on brief, for respondent.

Jason Berger, Boston, Mass., with whom Peabody, Brown, Rowley & Storey, Boston, Mass., was on brief, for intervenor Gallahue's Supermarkets.

Before COFFIN, Chief Judge, WINTER,* Circuit Judge, and SKINNER,** District Judge.

SKINNER, District Judge.

This case is before the Court on application of the National Labor Relations Board (Board) pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for enforcement of its order issued against Local 1445 of the United Food and Commercial Workers International Union, AFL–CIO (Union) and reported at 247 NLRB No. 151. Gallahue's Supermarkets, Inc. (Company) has intervened on the side of the Board.

The Board has concluded that the Union violated Section 8(b)(2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(2), when it demanded that the Company discharge employees who had not paid the Union's dues without first informing them of their obligation to pay under the collective-bargaining agreement. The Board has ordered the Union to cease and desist from this activity and to post notices in its meeting halls and business offices which state:

WE WILL NOT demand that employees be discharged for failing to pay union dues and fees without first advising employees of their specific obligations under the union-security provisions of the collective-bargaining agreement.

WE WILL NOT in any like or related manner restrain or coerce employees in the exercise of rights guaranteed them in Section 7 of the Act.

** Of the district of Massachusetts sitting by designation.

LOCAL 1445, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO

The Board's decision reversed the opinion of an Administrative Law Judge who had concluded that the Union's actions had not violated the National Labor Relations Act, and even if they had, a remedial order was not justified. The Board made the following findings of facts which are consistent with the Administrative Law Judge's fact findings and which are supported by substantial evidence on the record. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *Maine Yankee Atomic Power Co. v. NLRB*, 624 F.2d 347, 360 (1st Cir. 1980).

On May 30, 1978, approximately one-half of the Company's employees attended a meeting and ratified a collective-bargaining agreement which had been entered into by the Company and the Union. The provisions of the collective-bargaining agreement were explained to the employees at the meeting. Article III of the collective-bargaining agreement contained a union-security clause requiring all full-time and part-time employees to become union members no later than the 31st day following the agreement's execution date or the 31st day of their employment. Section 5 of Article III stated that if an employee failed to tender his dues or initiation fee as required by the union-security clause, the Union would notify the Company in writing and the Company would discharge the employee within seven days of the receipt of the writing. The employees could arrange to have the Company deduct their dues from their pay checks by completing checkoff cards. Pursuant to Section 3 of Article III the Company was to forward copies of all checkoff cards which the employees had completed to the Union.

The Union's business agent provided the Company's store managers with union membership forms and dues checkoff cards sometime in the middle of July. By September 5 or 6, only five employees had given the Company checkoff cards authorizing the Company to deduct dues from their checks. Another 15 employees had signed checkoff forms as a result of direct contact with Union representatives. At that time, the Company employed 60 or 65 persons.

On September 6, 1978, the Union sent a letter to the Company's president, Gallahue, notifying him that many employees had failed to join the Union and pay their dues as required by the collective-bargaining agreement's union-security provision. The letter demanded that the Company comply with Section 5 of Article III in the agreement which required the Company to dismiss its employees within seven days if the employees had failed to pay their union fees and dues.

The Union's president, Crowe, called Gallahue on September 8, 1978 and asked whether he had received this letter. After Gallahue responded that he had, Crowe stated that the Company would have to dismiss those employees who had not signed the checkoff cards within seven days. Gallahue informed Crowe that the employees had filed a union deauthorization petition and that an official of the NLRB had stated that employees could not be discharged while the petition was pending. Crowe replied that the nonpaying employees would have to be discharged "by Monday or we will have a picket line out in front of your store."

On September 11, 1978, the Union's president wrote a letter to the Company and again demanded the discharge of all employees who had not complied with the union-security clause. On September 20, the Union filed a grievance with the company demanding the discharge of all employees who had failed to pay their dues.

Although only one-half of the Company's employees had attended the ratification meeting during which the union-security provision and dues requirement were explained, the Union did not attempt to inform all employees of their financial obligations and the consequences of their failure to fulfill these obligations before it demanded that noncomplying employees be terminated. Not until October 21, 1978 did the Union send a letter to all employees ex-

plaining their obligations under the union-security agreement and informing them that they could pay their dues by having them deducted from their pay or by direct payment to the Union. By late October, all Company employees had signed checkoff cards in satisfaction of their union-security responsibilities.

Section 8(b)(2), 29 U.S.C. § 158(b)(2), makes it an unfair labor practice for a union or its agents to

cause or attempt to cause an employer . . . to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring . . . membership . . . .

A union's duty to deal fairly with its members when seeking to enforce a union-security agreement requires it to inform an employee of his obligations under a union-security clause in order that the employee may take whatever action is necessary to protect his job. A union failing to give actual and clear notice to an employee of his responsibility to pay dues before demanding the employee's discharge has been held to violate Section 8(b)(2), 29 U.S.C. § 158(b)(2). *H. C. Macaulay Foundry Co. v. NLRB*, 553 F.2d 1198, 1201 (9th Cir. 1972); *NLRB v. Hotel, Motel and Club Employees' Union Local 568*, 320 F.2d 254, 258 (3d Cir. 1963); *NLRB v. Construction and Building Material Teamsters Local No. 291*, 633 F.2d 1295, 1298 (9th Cir. 1980); *International Union of Electrical, Radio and Machine Workers, AFL–CIO, Frigidaire Local 801 v. NLRB*, 307 F.2d 679, 683 (D.C.Cir.), cert. denied, 371 U.S. 936, 83 S.Ct. 307, 9 L.Ed.2d 270 (1962); *NLRB v. Distillery, Rectifying, Wine and Allied Workers International Union of America, Local Union 38, AFL–CIO*, 642 F.2d 185 (6th Cir. 1981).

■ This Court has enforced without opinion an NLRB order which required a union to notify the employee of the amount of dues he owed, the method for calculating the dues owed, and the deadline for payment before it could ask an employer to terminate the employee for failure to pay his union dues. *Teamsters Local 122*, 203 NLRB 1041, 1042 (1973), *enf'd NLRB v. Local 122*, 502 F.2d 1160 (1st Cir. 1974). We now expressly adopt the rule imposing a duty on a union to notify an employee of such information before seeking termination on that ground.

■ The Union argues that its actions did not violate Section 8(b)(2) because its requests that nonpaying employees be discharged were never communicated to the employees and no employees were actually fired. Section 8(b)(2), however, makes it an unfair labor practice for a union to "cause or attempt to cause" an employer to discharge an employee improperly. The Union's demands that the Company terminate employees who had not paid their dues before notifying them of the amount of dues owed, the method of computing it, and the deadline for payment constituted an attempt to cause the discharge of an employee in violation of Section 8(b)(2).

■ The Union asserts, however, that its violation of Section 8(b)(2) was so minor as to not warrant the enforcement of the Board's order. The Board's discretion in framing remedies is broad and in the absence of an abuse of that discretion we should defer to its judgment. *See NLRB v. Seven-Up Bottling Co. of Miami, Inc.*, 344 U.S. 344, 346–47, 73 S.Ct. 287, 288–89, 97 L.Ed. 377 (1953); *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 539–40, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943). Since the Board's order will tend to inhibit the recurrence of the Union's unlawful conduct, we conclude that its order furthers the policy of section 8(b)(2) and is not an abuse of discretion.

■ The Union also suggests that the Board's order should not be enforced because the Union has notified all Company employees of their obligations under the union-security provision. The Union's cessation of its illegal activities does not render the case moot. *Labor Board v. Mexia Textile Mills*, 339 U.S. 563, 567, 70 S.Ct. 826, 828–829, 94 L.Ed. 1067 (1950); *NLRB v.*

*Pearl Bookbinding Co., Inc.*, 517 F.2d 1108, 1114 (1st Cir. 1975). An NLRB enforcement action is mooted only when a party can establish that there is no reasonable expectation that the wrong will be repeated. *NLRB v. Raytheon Corp.*, 398 U.S. 25, 27, 90 S.Ct. 1547, 1548, 26 L.Ed.2d 21 (1970); *NLRB v. International Union of Elevator Constructors Local No. 8*, 465 F.2d 974, 976 (9th Cir. 1972); *NLRB v. International Union of Operating Engineers, Locals 542 et al.*, 532 F.2d 902, 905 (3d Cir. 1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977). The Union has not conceded the illegality of its conduct. Since "the Board may reasonably desire the finality of judicial resolution of its own decisions as well as a court order to serve as a pointed deterrent against resumption of the illegal practices", *NLRB v. Pearl Bookbinding Co., Inc., supra* at 1114, we conclude that the Board's order should be enforced.

*Enforcement granted.*